UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Dakotans for Health, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. __4:21-cv-4045__ |
| | ) | |
| v. | ) | |
| | ) | |
| South Dakota Governor Kristi L. Noem, | ) | |
| in her official capacity, South Dakota | ) | |
| Attorney General Jason Ravnsborg, in | ) | |
| his official capacity, and South Dakota | ) | |
| Secretary of State Steve Barnett, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Complaint for Preliminary and Permanent Injunction
Barring Defendants from Enforcing or Threatening to Enforce
<u>Senate Bill 180</u>**

## Parties

1.      Dakotans for Health is a South Dakota ballot question committee, and a healthcare advocacy network dedicated to improving healthcare and health outcomes.

2.      Kristi L. Noem is the Governor of South Dakota and is sued in her official capacity.

3.      Jason Ravnsborg is the Attorney General of South Dakota and is sued in his official capacity.

4.      Steve Barnett is the Secretary of State of South Dakota and is sued in his official capacity.

## Jurisdiction

5.      This action is brought pursuant to 42 U.S.C. § 1983.  This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).

## Facts

6.      Dakotans for Health drafted a proposed South Dakota constitutional amendment to reform Medicaid to cover the working poor.  It submitted the proposed constitutional amendment to the Legislative Research Council for review, and to the Attorney General for a ballot explanation.  It took all the other acts

2

needed to obtain the petitions that will be used to collect the signatures needed to place the measure on the November 8, 2022, general election ballot.

7.      Dakotans for Health employs a paid circulator to circulate the petition, and expects to employ more in the future, in order to obtain the signatures needed to qualify the proposed constitutional amendment to reform Medicaid on the South Dakota 2022 ballot, especially given the restrictions posed by the pandemic, which make signature collection harder.

8.      Dakotans for Health's need to employ paid petition circulators for Medicaid reform was demonstrated by the promoters of Constitutional Amendment A (2020), who employed South Dakotans, before the pandemic, to obtain the signatures needed to place it on the ballot, which allowed South Dakota voters to express their will about reforming marijuana laws.

9.      The promoters of Constitutional Amendment A were not impeded by Senate Bill 180 (2020) ("SB 180"), because SB 180 did not go into effect until July 1, 2020, after the signatures needed to place Constitutional Amendment A on the ballot were gathered.

10.     If the proposed constitutional amendment to reform Medicaid is on the November 2022 ballot, the people of South Dakota will be able to express their will about it.

11.     SB 180 will unconstitutionally impede Dakotans for Health from obtaining the signatures needed to place Medicaid reform on the November 2022 ballot.

12.     Dakotans for Health has a pecuniary and political interest in preventing this from occurring.

13.     Defendants are charged with enforcing SB 180 and, unless restrained, will do so.

14.     "The right of initiative is very important in states like South Dakota where the dominant political party controls, and has for 26 years, the office of the governor, the state House and the State Senate." *SD VOICE v. Noem*, 380 F. Supp. 3d 939, 950 (D.S.D., No. Div. 2019).

15.     South Dakota citizens have repeatedly used the right of initiative to enact laws and constitutional amendments that the dominant political party opposes.

4

16.     The right of initiative is a real, working, functional source of citizen speech and direct citizen participation in the political process.

17.     Citizen measures enacted through the citizen initiative process, just in the past seven years, and despite the opposition of South Dakota's dominant political party, include:

a.     In 2014, Initiated Measure 17 allowed patients to choose their health care provider at no increased insurance cost. https://ballotpedia.org/South_Dakota_2014_ballot_measures (last visited March 26, 2021).

b.     Also in 2014, Initiated Measure 18 raised the minimum hourly wage from $7.25 to $8.50, and provided for a yearly increase based on inflation. *Id.* The Legislature promptly overturned the increase for people younger than age 18, but citizens referred this to a vote of the people, who in Referred Law 20 rejected it, thereby restoring in full Initiated Measure 18. https://ballotpedia.org/South_Dakota_2016_ballot_measures (last visited March 26, 2021).

5

c.     In 2016, Constitutional Amendment S, known as "Marsy's Law,"
       increased the rights of crime victims.  *Id.*

d.     Also in 2016, Initiated Measure 21 capped the short-term loan
       interest rate at 36%, reining in the scourge of payday lending. *Id.*

e.     Also in 2016, Initiated Measure 22 revised campaign finance and
       lobbying laws.  *Id.*

f.     By November, 2019, supporters of an initiated law to legalize
       marijuana for medical use, and an initiated constitutional
       amendment to legalize recreational marijuana, had obtained
       enough signatures to place these measures on the 2020 ballot.
       The people of South Dakota approved the law and constitutional
       amendment in November, 2020. https://ballotpedia.org/
       South_Dakota_2020_ballot_measures (last visited March 26,
       2021).

18.    In addition, two laws enacted by the Legislature were referred by
citizens in 2012 and defeated, and two more laws enacted by the Legislature were
referred by citizens in 2016 and defeated.

19.     In response to these citizen-initiated and approved constitutional amendments and laws, and referrals, the dominant political party in South Dakota sponsored or enacted laws to attempt to cripple the initiative process. Its first two attempts have already been held unconstitutional. This case challenges its third such attempt in three years.

20.     Mark Mickelson, while he was the Republican Speaker of the South Dakota House of Representatives in 2017 and 2018, organized, circulated, and promoted Initiated Measure 24 ("IM 24").

21.     Then-Republican Governor Dennis Daugaard wrote the published "pro" statement in support of IM 24 in 2018, which castigated "out-of-state interests" for promoting their ideas in South Dakota. *SD VOICE v. Noem, supra,* 380 F. Supp. 3d at 944.

22.     IM 24 attempted to "enact restrictions . . . to prevent those pursuing unpopular laws from amassing the resources necessary for effective advocacy." *SD VOICE v. Noem, supra,* 380 F. Supp. 3d at 950-51.

23.     IM 24 violated the First Amendment by unlawfully restricting political speech. *Id.* at 954.

24.     After Mickelson and Governor Daugaard organized and promoted IM 24's unconstitutional attempt to restrict political speech, their party organized, promoted, and enacted House Bill 1094 ("HB 1094") in 2019, for the same purpose.

25.     Republican Rep. Jon Hansen of Dell Rapids, sponsor of HB 1094, said that existing South Dakota petition law was being used to attempt to bring "California and Massachusetts liberal agendas" to South Dakota.

26.     Hansen said he believed that the leading opponent of HB 1094, Cory Heidelberger, did not like HB 1094 because it keeps Heidelberger's "out-of-state liberal allies" away from South Dakota.

27.     Hansen's statements were published in an Associated Press article that ran in the Rapid City Journal on June 19, 2019, at page A5, and in other newspapers in South Dakota.

28.     HB 1094 imposed substantial new restrictions on South Dakotans' ability to get initiated laws and constitutional amendments on the ballot, in order to further consolidate political power in South Dakota's dominant political party, thereby making it far harder for disfavored speakers to place ballot measures before the voters, and thereby attempting to control the ideas from which voters may choose.  The new restrictions also apply to referral petitions.

8

29.     *SD VOICE v. Noem*, 432 F.Supp. 3d 991 (D.S.D., No. Div. 2020), *appeal dismissed as moot*, 987 F.3d 1186, held HB 1094 unconstitutional as a violation of the First Amendment.

30.     The court ruled: "HB 1094's primary purpose is to severely regulate the process through which those who wish to circulate a petition may do so." *SD VOICE II* at 994.

31.     HB 1094 did so, in part, by imposing "disclosure provisions" that "place[d] serious and draconian burdens on protected speech." *Id*. at 1002.

32.     HB 1094 accomplished this by creating a public "directory of currently active circulators" that "would simply chill too much speech to be justifiable[.]" *Id.*

33.     This directory was to be available to the public, including opponents of an initiative.  The directory "attempted to impose on many of our own citizens enormous invasions of privacy and serious risks of being subjected to unwanted and sometimes dangerous harassment.  No legitimate governmental interest permits these heavy-handed measures, noncompliance with which threatens criminal and civil penalties." *Id.*

34.     The decision in *SD VOICE II* was issued on January 9, 2020.

35.     Two months later, the Legislature enacted SB 180.

9

36.     The plaintiffs in *SD VOICE II* used Rep. Hansen's statements (¶¶ 25-27

above) as evidence to help show the unconstitutionality of HB 1094.  This educated

Rep. Hansen and others not to make similar statements about SB 180.  But his

statements about HB 1094 are important in this lawsuit because HB 1094 was the

immediate precursor of SB 180.

**First Cause of Action—**
**SB 180's disclosure requirements for paid petition circulators**
**<u>violate the First Amendment</u>**

37.     Everything above is incorporated herein by this reference.

38.     Dakotans for Health, in obtaining the signatures needed to place a

constitutional amendment on the 2022 ballot, is engaged in First Amendment

activity that involves interactive communication seeking political change.

39.     Its right to engage in such communication "is at the core of the First

Amendment, and the right to petition for a redress of grievances is among the most

precious of liberties."  *Calzone v. Summers*, 942 F.3d 415, 422 (8th Cir. 2019) (*en banc*)

(cleaned up).

40.     "Petition circulation, we held [in *Meyer v. Grant*, 486 U.S. 414 (1988)], is

'core political speech,' because it involves 'interactive communication concerning

political change.'  First Amendment protection for such interaction, we agreed, is 'at

10

its zenith.'" *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 186-87 (1999) (internal citations omitted).

41.    "Petition circulation" includes circulation of petitions to pass Medicaid reform.

42.    SB 180 compels pre-circulation disclosure and public availability of personal information about paid petition circulators that makes them subject to harassment.

43.    Similar disclosure requirements were held unconstitutional in *SD VOICE II*. The only material differences between the disclosure requirements held unconstitutional in *SD VOICE II* and the disclosure requirements in the present case are (a) in *SD VOICE II* the disclosure requirements applied to volunteer and paid circulators, but here they apply only to paid circulators, and (b) in *SD VOICE II*, all circulators had to wear a number that allowed anyone to access their personal information, and include the number on the petition, whereas in this case paid circulators need not wear a number or include it on the petition, but anyone can still obtain all paid circulators' personal information, and use it to harass them before and while they attempt to obtain voter signatures.

11

44.     In oral argument in the Eighth Circuit in *SD VOICE II*, the State admitted that "the [paid circulator] directory is still available ahead of time." http://media-oa.ca8.uscourts.gov/OAaudio/2020/12/201262.MP3, at 4:54 of the recording.

45.     In the same oral argument, the State admitted that "the vast majority of House Bill 1094 — uh — Senate Bill 180 is still consistent with House Bill 1094." *Id.* at 6:28 of the recording.

46.    SB 180 goes far beyond the disclosure requirements held unconstitutional in *Buckley v. Am. Constitutional Law Found., supra*.

47.     Because SB 180 is a disclosure law, it is reviewed either under strict scrutiny, or "under a legal framework known as 'exacting scrutiny,'" which means it violates the First Amendment unless defendants can "show, at a minimum, that the law has a 'substantial relationship' to a 'sufficiently important governmental interest.'" *Calzone v. Summers, supra*, 942 F.3d at 423 and n.6 (cleaned up).

48.     A state's attempt to impose more onerous disclosure requirements on paid circulators than on volunteer circulators is unconstitutional: "Listing paid circulators and their income from circulation 'forces paid circulators to surrender the anonymity enjoyed by their volunteer counterparts,' [*American Constitutional Law*

*Found. v. Meyer*, 120 F.3d at 1105 (10th Cir. 1997)]; no more than tenuously related

to the substantial interests disclosure serves, Colorado's reporting requirements, to

the extent that they target paid circulators, 'fail exacting scrutiny,' *ibid*." *Buckley v.*

*Am. Constitutional Law Found., supra*, 525 U.S. at 204.

49.     In addition, SB 180 targets and substantially burdens *only* citizen ballot

campaigns—it does not apply to candidates, candidate committees, political action

committees, or political parties.

50.     In this respect, SB 180 is the same as IM 24 and HB 1094, in that they

"applie[d] only to ballot question committees," not "to candidates or candidate

committees, political action committees, or political parties." *SD VOICE v. Noem*,

*supra*, 380 F.Supp.3d at 945.

51.     SB 180 thus "restricts a medium of speech in the name of a particular

interest but leaves unfettered other modes of expression that implicate the same

interest," so its "underinclusiveness raises serious doubts about whether the

government is in fact pursuing the interest it invokes, rather than disfavoring a

particular speaker or viewpoint." *Johnson v. Minneapolis Park & Rec. Bd.*, 729 F.3d

1094, 1100 (8th Cir. 2013) (cleaned up), quoted with approval in *SD VOICE v. Noem*,

*supra*, 380 F.Supp.3d at 949.

## Second Cause of Action—
## SB 180's disqualification of all signatures obtained due to
## <u>insignificant compliance errors violates the First Amendment</u>

52.     Everything above is incorporated herein by this reference.

53.     "A citizen's signing of a petition is core political speech." *Miller v. Thurston*, 967 F.3d 727, 738 (8th Cir. 2020) (cleaned up), quoting *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 128 (2011).

54.     SB 180 voids all voters' signatures if the circulator who collected them made a totally innocent, immaterial error in any information the circulator is required to disclose.

55.     In addition to the initial disclosures a circulator must make, SB 180, like HB 1094, requires that *both* a "paid circulator *and* petition sponsor shall update any information required under this section with the secretary of state not more than seven days of any change." SDCL 2-1-1.5 (last paragraph) (emphasis added). As *SD VOICE II* ruled, this "language is broad enough that updates could be required indefinitely, at least until the measure is voted on or fails." 432 F.Supp.3d at 1001. Medicaid reform, if it qualifies for the 2022 ballot, will not be voted on until November 8, 2022, so SDCL 2-1-1.5 will have a substantial impact on whether voters' signatures on ballot petitions will be invalidated for insignificant compliance errors.

56.     The State has formally stated that it will enforce this double-disclosure requirement exactly as it is written.  "Both the petition sponsor *and* petition circulator must update information filed with the secretary of state within seven days of a change to ensure that the state has up-to-date information on file for petition circulators and sponsors."  State's Brief, *S.D. Voice v. Noem*, Eighth Circuit No. 20-1262 (May 1, 2020), addressing the same requirement in HB 1094, at 6-7 (emphasis added).

57.     Voiding all signatures collected by a paid circulator because of the circulator's innocent error in the extensive information that the circulator must disclose, or the circulator or petition sponsor's failure to double-disclose any change within seven days, is unconstitutional, because they fail the test that any burden on "a political party, an individual voter, or a discrete class of voters . . . must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008), quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992).

58.     Both the innocent-error rule and the double-disclosure requirement violate this requirement, because no such sufficiently weighty state interests exist to justify these limitations.

15

59.     S.D.C.L. § 2-1-10 already contains requirements that safeguard the initiative process, backed by the criminal sanction for perjury (S.D.C.L. § 32-3-19), a Class 6 felony punishable by two years' imprisonment.

60.     Specifically, S.D.C.L. § 2-1-10 already requires that:

    a.     "each petition circulator shall sign a verification attesting that the circulator personally circulated the petition and is not attesting to any signature obtained by any other person;

    b.     "that the petition circulator is a resident of South Dakota;

    c.     "that the circulator made reasonable inquiry and, to the best of the circulator's knowledge, each person signing the petition is a qualified voter of the state in the county indicated on the signature line;

    d.     "and that no state statue regarding the circulation of petitions was knowingly violated."

    e.     In addition, "[t]he circulator's signature on the verification shall be witnessed and notarized by a notary public commissioned in South Dakota or other officer authorized to administer oaths pursuant to S.D.C.L. § 18-3-1."

**Third Cause of Action—**
**SB 180's overt discrimination against**
**paid circulators violates the First Amendment**

61.     Everything above is incorporated herein by this reference.

62.     SB 180 applies only to paid ballot petition circulators; unpaid circulators

are exempt from its requirements.

63.     Circulators and campaigns are subject to SB 180 only because they use

money to help obtain political speech, including the direct, in-person, interactive

political speech between circulators and voters that is the heart of petition

circulation.

64.     *Citizens United v. FEC*, 558 U.S. 310, 339 (2010), holds that limits on the

use of money in political campaigns restrain political speech and are subject to strict

scrutiny.  "Speech is an essential mechanism of democracy, for it is the means to

hold officials accountable to the people.  [citation omitted]  The right of citizens to

inquire, to hear, to speak, and to use information to reach consensus is a

precondition to enlightened self-government and a necessary means to protect it."

*Id.* at 339.

65.     Accordingly, "Laws that burden political speech are subject to strict

scrutiny, which requires the Government to prove that the restriction furthers a

compelling interest and is narrowly tailored to achieve that interest." *Id.* at 340 (internal quotations omitted).

66.     Money in effect is speech, because it enables speech, and without money speech is ineffective: "All speakers, including individuals and the media, use money amassed from the economic marketplace to fund their speech. *The First Amendment protects the resulting speech,* even if it was enabled by economic transactions with persons or entities who disagree with the speaker's ideas." *Id.* at 351 (emphasis added).

67.     SB 180 flagrantly burdens political speech, and violates the First Amendment, by discriminating against ballot campaigns that use paid petition circulators.

68.     The only potential legitimate state interest in discrimination based on the use of money to obtain speech is to prohibit *quid pro quo* corruption. *Calzone v. Summers*, 942 F.3d 415, 424 (8th Cir. 2019) (en banc) ("[t]he government may target only a specific type of corruption—quid pro quo corruption") (cleaned up).

69.     "*Quid pro quo*" corruption is "a direct exchange of an official act for money. [citation omitted] 'The hallmark of corruption is the financial *quid pro quo*: dollars for political favors.'" *McCutcheon v. FEC*, 572 U.S. 185, 192 (2014), quoting

*FEC v. National Conservative Political Action Committee*, 470 U.S. 480, 497 (1985) (Roberts, C.J., plurality opinion).

70.     If enacted, an initiated law or constitutional amendment, or a defeated referred law, cannot reach back to provide secret favors to those who provided money to help get it on the ballot.

71.     So money cannot even potentially buy official actions or political favors from any ballot question.

72.     "The risk of corruption perceived in cases involving candidate elections [citations omitted] simply is not present in a popular vote on a public issue." *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 790 (1978), quoted with approval in *Missourians v. Klahr*, 892 F.3d 944, 952 (8th Cir. 2018).

### Request for Relief

Plaintiff requests this Court grant:

1.     A preliminary and permanent injunction barring defendants from enforcing or threatening to enforce SB 180;

2.     Plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988; and

3.     Such other and further relief as the Court deems just.

Dated: March 30, 2021          /s/ James D. Leach
                               James D. Leach
                               Attorney at Law
                               1617 Sheridan Lake Rd.
                               Rapid City, SD 57702
                               Tel: (605) 341-4400
                               jim@southdakotajustice.com
                               Attorney for Plaintiff

JS 44 (Rev. 10/20) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Dakotans for Health

**DEFENDANTS**

SD Gov. Kristi L. Noem, SD Atty. Genl. Jason Ravnsborg, and SD Secty. of State Steve Barnett, all sued in their officia

**(b)** County of Residence of First Listed Plaintiff    Minnehaha
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Hughes
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
         THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

James D. Leach/1617 Sheridan Lake Rd/Rapid City, SD 57702/605 341 4400

Attorneys *(If Known)*

Jason Ravnsborg, Attorney General
1302 US Hwy 14 #1
Pierre, SD 57501

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*          Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:
Plaintiff alleges that South Dakota SB 180 (2020) is unconstitutional

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    3/30/21

SIGNATURE OF ATTORNEY OF RECORD    [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____