UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION


| | | |
|---|---|---|
| Dakotans for Health, | ) | |
| | ) | |
|     Plaintiff, | ) | Civ. 4:21-cv-4045-LLP |
| | ) | |
| v. | ) | |
| | ) | |
| South Dakota Governor Kristi L. Noem, | ) | |
| in her official capacity, South Dakota | ) | |
| Attorney General Marty Jackley, in | ) | |
| his official capacity, and South Dakota | ) | |
| Secretary of State Monae L. Johnson, | ) | |
| in her official capacity, | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |


**Memorandum in Support of**
**<u>Motion for Order Enforcing Permanent Injunction</u>**

# Table of Contents

I.     Facts and legal issues     3

II.     Argument     10

     A.     Dakotans for Health continues to have standing     10

     B.     State Representative Hansen and Life Defense Fund are bound     11
               by the injunction and by the State's admission that the injunction
               includes the 30-day petition circulator residency requirement

     C.     Because it is necessary in aid of its jurisdiction, this Court can     13
               and should join additional defendants and pursuant to the All
               Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act,
               28 U.S.C. § 2283, stay them from pursuing the state court action

          1.     The All Writs Act     13

          2.     The Anti-Injunction Act     15

     D.     In the extremely unlikely event that it becomes necessary for     21
               this Court to stay the state court action or a state court order,
               such action is fully within this Court's authority

III.     Conclusion     22

## I.   Facts and legal issues

Dakotans for Health sought a preliminary and permanent injunction barring defendants from enforcing Senate Bill 180 (2020).  Doc. 1.  This Court granted a preliminary injunction.  Docs. 30 and 31.  Defendants appealed.  On November 1, 2022, the Eighth Circuit affirmed, in a decision reported at 52 F. 4th 381.

On November 30, 2022, the parties filed a Joint Motion for Entry of Final Judgment "ask[ing] the Court to enter final judgment permanently enjoining the Defendants and their successors in office from enforcing Senate Bill 180 (2020) so that no further proceedings in this case are necessary."  Doc. 62.  On January 10, 2023, this Court agreed, entering a Judgment providing: "IT IS ORDERED, ADJUDGED AND DECREED that Defendants are permanently enjoined from enforcing Senate Bill 180 (2020)."  Doc. 64.

The Court did not include the "successors in office" language requested by the parties, but that language was unnecessary—successors in office are automatically bound. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("[W]hen officials sued in their official capacities leave office, their successors automatically assume their role in the litigation.").

Senate Bill 180 required all petition circulators to be "a resident of this state for at least thirty days prior to acting as a petition circulator[.]"  Doc. 7-9, page 1, Section 2, SDCL 2-1-1.3(2).  So this requirement, along with the rest of Senate Bill 180, was permanently enjoined.  Doc. 64.

Before the Eighth Circuit's decision in this case, *League of Women Voters of South Dakota, et al., v. South Dakota Governor Kristi L. Noem, et al.*, Civ. 22-cv-4085-RAL, challenged SB 180's 30-day petition circulator residency requirement.  The *League of Women Voters* plaintiffs contended that "South Dakota's residency requirement for petition circulators violates rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983, and rights guaranteed by Article VI §§ 18 and 19 of the South Dakota Constitution."  They sought a permanent injunction against the residency requirement for petition circulators.  *League of Women Voters v. Noem*, Doc. 3 ¶ 13.

Two weeks after this Court permanently enjoined Senate Bill 180, the State, through its attorney James E. Moore, writing for himself and Assistant Attorney General Clifton Katz, sent the *League of Women Voters v. Noem* plaintiffs a copy of this Court's permanent injunction in *Dakotans for Health v. Noem*.  Moore and Katz told

the plaintiffs: "The permanent injunction includes the 30-day residency requirement challenged in your lawsuit."

The State, through Moore and Katz, asked the *League of Women Voters* plaintiffs to stipulate to dismissal, and said that if the plaintiffs chose not to do so, the State expected to file a motion to dismiss the case as moot. Declaration of James D. Leach ("Declaration"), Exhibit 1. The plaintiffs agreed, and on January 26, 2023, plaintiffs filed a Stipulation to Dismiss the case as moot. *League of Women Voters v. Noem*, Doc. 33. The next day, the court entered an order dismissing the case. Doc. 34.

All was well until June 13, 2024, when South Dakota State Representative Jon Hansen, Life Defense Fund, and Leslee Unruh sued Dakotans for Health in state court, in a case titled *Life Defense Fund and Leslee Unruh v. Dakotans for Health*. Declaration Exhibit 2. Hansen is the Chair and Treasurer of Life Defense Fund. Declaration Exhibit 3. Unruh is the Co-Chair of Life Defense Fund. https://lifedefensefund.com/ (last visited June 17, 2024). The *Life Defense Fund* plaintiffs seek an order requiring Secretary of State Monae L. Johnson, and indirectly requiring Governor Noem and Attorney General Jackley, to enforce the 30-day

petition circulator residency requirement of SB 180, and thereby to flout this Court's permanent injunction.

The *Life Defense Fund* plaintiffs argue that enforcing the 30-day petition circulator residency requirement means that Johnson must withdraw her certification for the November 2024 ballot of the citizen-initiated proposed constitutional amendment that would place *Roe v. Wade* protections in the South Dakota constitution. Declaration Exhibit 2 p. 17, Prayer for Relief ¶¶ 2 and 3. For State Representative Hansen, Life Defense Fund, and Unruh, allowing South Dakotans to exercise their right under the South Dakota Constitution to vote on the *Roe v. Wade* initiative is a bridge too far.

The *Life Defense Fund* plaintiffs point out that Secretary Johnson certified the *Roe v. Wade* initiative for the ballot even though the petition forms that she provided to Dakotans for Health, and that 54,281 voters signed, did not include a certification that the circulator met the 30-day residency requirement. They assert that because of this, and because the petition circulators did not otherwise certify their residency, every signature collected for the *Roe v. Wade* initiative fails to comply with South Dakota law, and none of the 54,281 signatures submitted may be counted. Declaration Exhibit 2, pp. 5-12, ¶¶ 24 to 48. They add that all the signatures

6

collected by circulator Leah Bothamley may not be counted because she does not meet the petition circulator residency requirement.  Declaration Exhibit 2, p. 13, ¶¶ 59 to 61.

The *Life Defense Fund* plaintiffs have other arguments why the citizens of South Dakota cannot be allowed to vote on whether to restore their *Roe v. Wade* rights.  Declaration Exhibit 2, ¶¶ 56 to 58 and 62 to 90.  But their arguments based on the 30-day petition circulator residency requirement, including their argument as to Ms. Bothamley, are critical to the possible success of their lawsuit, because their remaining allegations are insufficient to withstand a motion to dismiss for failure to state a claim.

Because this Court permanently enjoined SB 180, including the 30-day petition circulator residency requirement, Secretary Johnson properly refused to require compliance with it.  Indeed, Johnson acted in the only lawful manner available to her.

The *Life Defense Fund* plaintiffs chose to wait until two days after the May 7, 2024, petition signature deadline before they sprang their surprise argument on Secretary Johnson.  https://sdsos.gov/elections-voting/upcoming-elections/ballot-question-information/default.aspx (ballot question deadline May 7,

2024), and Declaration Exhibit 2, p. 4 ¶ 18 (Life Defense Fund's legal argument to Secretary of State about petition circulator residency requirement allegedly having survived the SB 180 permanent injunction was submitted to Secretary Johnson on May 9, 2024). This guaranteed that Dakotans for Health could not possibly comply with the previously-enjoined petition circulator residency requirement.

In short, State Representative Hansen, Life Defense Fund, and Leslee Unruh's *Life Defense Fund* lawsuit ask a state court to purport to compel Secretary Johnson, as well as Governor Noem and Attorney General Jackley, to violate this Court's permanent injunction by retroactively enforcing SB 180's 30-day petition circulator residency requirement. And it asks a state court to compel them to disregard the State's agreement in *League of Women Voters v. Noem*, an agreement made on behalf of the Governor, the previous Secretary of State, and the previous Attorney General.

This Court's permanent injunction applies directly to Johnson by reason of F. R. Civ. P. 25(d). No member of state government, other than State Representative Hansen, has questioned, or sought to modify or evade, the permanent injunction. Nor has anyone other than the *Life Defense Fund* plaintiffs disputed the State's agreement in *League of Women Voters* with the obvious fact that this Court's

permanent injunction in the instant case "includes the 30-day residency requirement challenged in [the *League of Women Voters*] lawsuit."

Dakotans for Health brought this lawsuit to hold SB 180 unconstitutional. Dakotans for Health succeeded.  SB 180 includes the 30-day petition circulator residency requirement.  This Court permanently enjoined it along with the rest of SB 180.  And the State explicitly agreed that the injunction included the 30-day petition circulator residency requirement, and used that agreement to obtain dismissal of the *League of Women Voters v. Noem* case challenging it.

The potential losers in the State Representative Hansen-Life Defense Fund-Unruh scheme are Dakotans for Health, the 54,281 signers of the *Roe v. Wade* initiated constitutional amendment, and all the voters of South Dakota, who because of Dakotans for Health's work have the right to vote on whether to add *Roe v. Wade* protections to their constitution.

The scheme threatens to violate Dakotans for Health's right to due process of law, including its right to go to court in this case and obtain through the methods prescribed by law a judicial determination that SB 180 was and is unconstitutional; its right to enforce the ruling it obtained in this case; and its right to the benefit of the supremacy clause that makes federal court decisions paramount over contrary state

court rulings. The schemers have no right to attempt to evade this Court's permanent injunction, or to attempt to obtain a state court order that would purport to require state officials to do so.

## II. Argument

### A. Dakotans for Health continues to have standing

This motion seeks an order enforcing this Court's Judgment and permanent injunction of January 10, 2023 (Doc. 64), by joining South Dakota State Representative Jon Hansen, Life Defense Fund, and Leslee Unruh as defendants in this action, and permanently enjoining them and all persons acting in concert with them from attempting to obtain a state court order that would purport to compel defendants Governor Noem, Attorney General Jackley, and Secretary of State Johnson to enforce the petition circulator residency requirement, and thereby violate this Court's permanent injunction, Doc. 64.

Dakotans for Health, as the sponsor of the *Roe v. Wade* initiated amendment, spent an extraordinary amount of effort circulating petitions to obtain the required signatures—and did so despite the Life Defense Fund's well-publicized "decline to sign" obstruction of the petition campaign. Dakotans for Health will suffer injury in fact if the scheme succeeds, because all its work would be for naught. The

10

potential injury would be caused by the persons it seeks to enjoin.  The potential injury would be redressed by judicial relief.  Accordingly, Dakotans for Health continues to have standing. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).

    **B.**    **State Representative Hansen and Life Defense Fund are bound by the injunction and by the State's admission that the injunction includes the 30-day petition circulator residency requirement**

An injunction directly binds all "persons who are in active concert or *participation* with anyone described in Rule 65(d)(2)(A) or (B)."  F. R. Civ. P. 65(d)(2)(C) (emphasis added).  The persons named in Rule 65(d)(2)(C) are the parties and their officers, agents, servants, employees, and attorneys.  State Representative Hansen was not a party to this case, but he participated in it.  He was the prime House sponsor of SB 180.  https://sdlegislature.gov/Session/Bill/12123 (last visited June 15, 2024).  In this litigation, Dakotans for Health filed and relied on his deposition from a previous case.  Doc. 7-5.  And the State filed and relied on an Affidavit Representative Hansen signed specifically for this litigation to attempt to persuade this Court that SB 180 was constitutional.  Doc. 17.  So Representative Hansen "participat[ed]" in this case as a witness, and he is bound by this Court's permanent injunction that defendants may not enforce SB 180.  Doc. 64.

Likewise, an injunction binds "those identified with [the defendants] in interest[.]" *United States v. Yielding*, 657 F.3d 722, 728 (8th Cir. 2011), quoting *Thompson v. Freeman*, 648 F.2d 1144, 1147 (8th Cir. 1981).  Representative Hansen is identified with the defendants in interest: they both claimed in this lawsuit that SB 180, including its 30-day petition circulator residency requirement, was constitutional.  Representative Hansen and Life Defense Fund make that same claim in their new state court case *Life Defense Fund v. Dakotans for Health*.

Representative Hansen may not do through the Life Defense Fund what he cannot do himself.  *NRA of Am. v. Vullo*, ___ U.S. ___, 219 L Ed. 2d 642, 653 (May 30, 2024) ("a government official cannot do indirectly what she is barred from doing directly[.]")  Because Representative Hansen is bound by the injunction, Life Defense Fund, of which he is the committee chair and treasurer, is likewise bound. Declaration Exhibit 3.

**C.** **Because it is necessary in aid of its jurisdiction, this Court can and should join additional defendants and pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283, stay them from pursuing the state court action**

**1.** **The All Writs Act**

The venerable All Writs Act, 28 U.S.C. § 1651, which was part of the Judiciary Act of 1789, authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." A district court "may exercise ancillary enforcement jurisdiction to prevent a state court action from contravening a decree that the federal court has previously issued." *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 817 (8th Cir. 2009).

In addition, "A federal court . . . has jurisdiction through means of a supplemental proceeding to enjoin the relitigation in a state court of a matter litigated, determined, and adjudicated by its valid decree regularly entered, if the result of the relitigation would be to destroy the effect of the decree rendered in the United States Court." *Id.*, quoting *Berman v. Denver Tramway Corp*, 197 F.2d 946, 950 (10th Cir. 1952). *Accord, United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007,

1015 (9th Cir. 1999) ("Federal courts are empowered by the All Writs Act, 28 U.S.C. § 1651, to enjoin state court proceedings that interfere with federal judgments.")

This is exactly what Dakotans for Health requests: that this Court exercise its jurisdiction—whether called "ancillary," "supplemental," or other—and issue an injunction to prevent relitigating in a state court action of a matter this Court previously decided, contravening this Court's permanent injunction, and purporting to destroy its effect.

The authority granted by the All Writs Act is fundamental to a federal court's function. Without the authority, ability, and willingness to enforce its orders and judgments, those orders and judgments would be here today, gone tomorrow. *System Federation No. 91 Railway Employees' Dep't v. Wright*, 364 U.S. 642, 647 (1961) ("an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief. Firmness and stability must no doubt be attributed to continuing injunctive relief based on adjudicated facts and law, and neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided.")

14

## 2.    The Anti-Injunction Act

The Anti-Injunction Act, 28 U.S.C. § 2283, authorizes a federal court to grant an injunction to stay state court proceedings "where necessary in aid of its jurisdiction." An injunction is necessary in aid of a federal court's jurisdiction where a federal court has ordered a state official to do or not do something, then a state court purports to order the same official to do the opposite. The rule prevents a state court from purporting to overrule a federal court, and from purporting to alter a federal court judgment and relitigate the matter.

In *Thomason v. Cooper*, 254 F.2d 808 (8th Cir. 1958), the district court had ordered a plan for the integration of the Little Rock, Arkansas schools. A private citizen, not a party to the case, sued in state court seeking a state court order preventing the implementation of the plan. The citizen obtained a state court order barring the plan, on the grounds that "public sentiment has undergone a swift change," and "a probability of violence and civil commotion exists in the event the plan is carried out at this particular time." *Id.* at 809-10.

The district court entered an order making the private state court plaintiff a party to the federal case, and enjoined her from using the state court order. The court of appeals affirmed. It explained that the district court injunction was

15

permissible under § 2283.  The state court order put the federal defendants—who had agreed to the district court order for integration, and had not later challenged it—between "the upper and nether millstone."  *Id.* at 810.

The court of appeals explained that the federal defendants "had, in effect, been ordered by the federal court to carry out the plan of school integration, and had by the state court been enjoined from carrying it out.  The schools were about to be opened and prompt action was imperative to enable the School Board to know whether to proceed with its plan. . . . or whether to abandon it because of the decree of the state court."  *Id.*

*Thomason v. Cooper* is on point.  This Court permanently enjoined defendants, including the Secretary of State, from enforcing SB 180.  The 30-day petition circulator residency requirement is part of SB 180, as the state defendants themselves recognized in *League of Women Voters v. Noem*.  So Secretary Johnson may not enforce the 30-day petition circulator residence requirement.  This will cause her no distress, because she (through her predecessor in office), as well as Governor Noem and Attorney General Jackley (through his predecessor in office) all agreed that requirement is unconstitutional and unenforceable.

But the plaintiffs in *Life Defense Fund v. Dakotans for Health* have a different plan.  They want a state court to order Secretary Johnson to enforce the 30-day petition circulator residency requirement.  If the state court should do so, what should she do?  Obey this Court's injunction, and disregard the state court order?  Or obey the state court order, and disregard this Court's injunction?  The Supremacy Clause makes the answer clear, but Secretary Johnson should not be put to that test.  In Arkansas this apparently is called being between "the upper and nether millstone"; northwesterly of there, but still in the Eighth Circuit, South Dakotans would call it being between a rock and a hard place.

In *Thomason v. Cooper*, the schools were about to open.  State officials needed to know which court's order to obey.  In the present case, South Dakota is in the final run-up to election season.  The Secretary of State is required by S.D.C.L. § 12-13-1 to deliver to each county auditor a certified copy of each proposed amendment to the Constitution to be voted on at the election, and to do so "at least twelve weeks prior to the general election."  This year the twelve-weeks-prior date is August 13.  With that date fast approaching, the Secretary of State needs to know that she cannot preclude the *Roe v. Wade* initiative from being on the ballot on the ground that

17

Dakotans for Health did not follow the 30-day petition circulator residency requirement that this Court enjoined.

*Swann v. Charlotte-Mecklenburg Board of Education*, 501 F.2d 383 (4th Cir. 1974) (en banc), is similar to *Thomason v. Cooper*. The district court had entered a school desegregation order. Parents who were not a party to the original action sued in state court, seeking an order that part of the order violated state law. The school board was "relatively neutral, its primary concern being to avoid possibly conflicting orders from state and federal courts." *Id.* at 384. The district court named the parents as additional defendants in the federal action and enjoined them from prosecuting the state court action—the same remedy sought here.

The court of appeals affirmed, stating that the district court injunction was "proper as an express exception" to § 2283. It explained that "the pending state suit could affect the Board's efforts to comply" with the previous federal order, and that the state court claim "cannot be separated from the order previously entered by the district court." *Id.* The same is true in the present case.

In *Doe v. Ceci*, 517 F.2d 1203 (7th Cir. 1975), the district court had ordered defendants to allow medical personnel to perform elective abortions at a hospital. A private plaintiff, not a party to the federal litigation, sued in state court and

obtained a temporary restraining order precluding county funds from being used for such abortions.  The federal plaintiff sought a federal injunction against the state judge who issued the temporary restraining order.  The district court granted it, and the court of appeals affirmed.  The court explained that the "net result" of the state court order was to prevent the federal defendants from complying with the federal injunction.  Accordingly, "[s]ection 2283 allows a state court proceeding having that effect to be stayed by a federal court."  517 F.2d at 1206.  (With respect to the state court judge being named as a defendant, the court added that "[n]ormally enjoining the plaintiff in the state court is sufficient to prevent further interference with the federal judgment."  *Id.* n.3.  Dakotans for Health has not named the state court as a defendant.)

In *United States v. D.C.*, 654 F.2d 802 (D. C. Cir. 1981), a district court ordered defendants to budget funds to implement a sludge disposal site.  A county sued in state court to attempt to block this from occurring.  The district court enjoined the state court proceedings.  The court of appeals affirmed.  Under section 2283, the court explained, the issue is "the effect a state proceeding would have on a prior federal judgment," so that "[w]here a state court enjoins a course of conduct which

19

is necessary to comply with a prior federal court order, the federal court has authority to effectuate its order by enjoining the state proceeding." *Id.* at 810.

In *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1989), a district court entered final judgment on plaintiffs' antitrust claims. Non-parties to the case sued in state court, making claims that were contrary to the terms of the district court's final judgment. The district court entered a preliminary injunction forbidding the state court plaintiffs from continuing to prosecute their case. The court of appeals affirmed, under the "necessary in aid of its jurisdiction" rule of § 2283. The court explained that the exception is "applicable to an injunction of a state court action challenging federal court orders implementing an earlier [federal] consent decree." *Id.* at 881.

Finally, in *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007 (9th Cir. 1999), federal courts adjudicated state water rights. A county—apparently not a party to the original proceeding—sued in state court over a water rights issue. The district court enjoined the state court lawsuit. The court of appeals affirmed. The court of appeals explained that the injunction was "necessary in aid of [the] jurisdiction" of the district court, and thus was appropriate under § 2283. *Id.* at 1015.

In short, under all these authorities, the parties sought to be restrained

20

here—State Representative Hansen, Life Defense Fund, Leslee Unruh, and everyone acting in concert with them—should be permanently enjoined from attempting to obtain a state court order that would purport to compel defendants to enforce the 30-day petition circulator residency requirement, and thereby to violate this Court's permanent injunction, Doc. 64.

### D. In the extremely unlikely event that it becomes necessary for this Court to stay the state court action or a state court order, such action is fully within this Court's authority

Dakotans for Health has not asked this Court to stay the state court proceeding *Life Defense Fund v. Dakotans for Health*, because doing so is unnecessary. Instead, Dakotans for Health seeks to restrain the people who brought the state court case from pursuing it. By doing so, Dakotans for Health seeks to avoid the possibility that the state court could eventually issue an order that directly conflicts with this Court's permanent injunction. If such an order were issued, this Court would be justified in restraining the state court from enforcing it. And this Court would have no alternative to doing so, unless it were willing to stand by and allow the state court to destroy its existing permanent injunction. Such events never need come to pass, because this Court has the far better alternative of joining the *Life Defense Fund* plaintiffs, then enjoining them from pursuing their state court lawsuit.

21

III.   **Conclusion**

Dakotans for Health asks this Court to join South Dakota State Representative Jon Hansen, Life Defense Fund, and Leslee Unruh as defendants in this action, and permanently enjoin them and all persons acting in concert with them from attempting to obtain a state court order that would purport to compel Governor Noem, Attorney General Jackley, and Secretary of State Johnson to enforce the 30-day petition circulator residency requirement, and thereby to violate this Court's permanent injunction, Doc. 64.

Dated: June 18, 2024          Respectfully submitted,

/s/ James D. Leach
James D. Leach
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
(605) 341-4400
jim@southdakotajustice.com
Attorney for Dakotans for Health

22

Certificate of Service

I certify that on June 18, 2024, I served this document as follows:

1.      On defendants by filing it electronically, thereby causing automatic service to be made on defendants' attorneys of record;

2.      On Attorney General Marty Jackley by email at the address shown in the State Bar of South Dakota Membership Directory, which is Marty.Jackley@state.sd.us;

3.      On South Dakota State Representative Jon Hansen, by email at the address shown in the State Bar of South Dakota Membership Directory, which is jon@jonhansenlawoffice.com; and

4.      On Sara Frankenstein, by email at the address shown in the State Bar of South Dakota Membership Directory, which is sfrankenstein@gpna.com.

/s/ James D. Leach
James D. Leach