UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAKOTANS FOR HEALTH, | Case No. 4:21-cv-04045-KES |
| Plaintiff, | |
| v. | |
| SOUTH DAKOTA GOVERNOR KRISTI L. NOEM, in her official capacity, ATTORNEY GENERAL MARTY JACKLEY, in his official capacity, and SOUTH DAKOTA SECRETARY OF STATE MONAE L. JOHNSON, in her official capacity, | **SPECIAL APPEARANCE AND LIFE DEFENSE'S SUPPLEMENTAL BRIEFING (DOCKET 70)** |
| Defendants. | |

The undersigned attorney, Richard M. Williams of Gunderson, Palmer, Nelson & Ashmore, LLP, of Rapid City, South Dakota, as counsel for potential defendants South Dakota State Representative Jon Hansen, Life Defense Fund, and Leslee Unruh, collectively ("Life Defense"), for the special and limited purpose of providing supplemental briefing ordered by this Court (Docket 70) submits the following brief.

**INTRODUCTION**

On June 20, 2024, Plaintiff, Dakotans for Health ("DFH"), filed a motion and brief requesting that this Court enter an order enforcing the judgment and permanent injunction, entered in the above-captioned matter (Docket 64), against South Dakota Representative Jon Hansen, Life Defense Fund, and Leslee Unruh. (Dockets 65-67). On June 24, 2024, this Court issued an Order Requesting Briefing. (Docket 70). In the Order Requesting Briefing, the Court posed four questions and ordered simultaneous briefs on the issues by noon, Monday, July 1, 2024. Life Defense filed a Notice of Special Appearance to comply with the Order to address

those questions and did not concede to jurisdiction over Life Defense in the above-entitled action.  Plaintiff DFH and potential defendants Life Defense complied with the Order Requesting Briefing and filed simultaneous briefing on July 1, 2024.  Thereafter, DFH sought to file a response to Life Defense Fund's Brief (Doc. 78). Life Defense now files this supplemental brief in response to DFH's Response to Life Defense's Brief (Docket 80).

## ARGUMENT

DFH misunderstand Life Defense's arguments.  (Docket 78-1).  Life Defense in no way is trying to usurp existing court orders.  Rather, Life Defense relies on *SD Voice v. Noem*, 987 F.3d 1186 (8th Cir. 2021)[1] and *Dakotans for Health v. Noem*, 543 F.Supp.3d 769 (D.S.D. 2021) (4:21-CV-4045-LLP) to reach its conclusion that SDCL § 2-1-1.4 is still good law.  In fact, Life Defense's argument does not implicate SB 180 beyond pointing out that it was enjoined.

In DFH's initial request for injunctive relief it only sought the enforcement of Judge Piersol's decision in *Dakotans for Health v. Noem* which enjoined SB 180.  (Docket 65 – 67). Now DFH seeks to have this Court effectively amend that order to encapsulate SDCL § 2-1-1.4. However, such *carte blanch* inclusion of § 2-1-1.4 is not proper.  If DFH wishes to challenge the constitutionality of § 2-1-1.4, it must file a complaint and pursue a judicial determination.  "The constitutional analysis in cases involving restrictions on petition circulators is fact-intensive." *Dakotans for Health*, 543 F.Supp.3d at 784.  The existing order does not enjoin § 2-1-1.4, and in no event can this Court enjoin § 2-1-1.4 without a trial to determine its constitutionality.

---

[1] Life Defense also relies on *SD Voice v. Noem*, 432 F.Supp.3d 2020 (D.S.D. 2020) (1:19-CV-01017-CBK).

### A. Dakotans for Health's originally sought the enforcement of this Court's Order enjoining SB 180

On June 18, 2024, DFH attempted to bind Life Defense to this Court's Order ("Order") deeming SB 180 unconstitutional and permanently enjoining its enforceability. (Docket 67). Now DFH seeks to have this Court determine SDCL § 2-1-1.4 as unconstitutional under that same Order because it also has a residency component in the statute. (Docket 78-1). However, SB 180 and § 2-1-1.4 are completely distinct from one another. They also act differently in effect. Therefore, to determine the constitutionality of § 2-1-1.4, a separate court proceeding would need to be commenced. *See S.D. Voice v. Noem*, 987 F.3d 1186, 1189 (8th Cir. 2021) (determining SB 180 and HB 1094 were not sufficiently similar to maintain jurisdiction over the case on appeal).

In *SD Voice*, the Eighth Circuit determined the appeal was moot which divested the court of standing to consider the case. *Id.* at 1190. The underlying issue involved SB 180 – the same SB 180 as in this case – and HB 1094. *Id.* at 1188-89. At the lower court, HB 1094 was ruled unconstitutional. *S.D. Voice v. Noem*, 432 F.Supp.3d 991, 1003 (D.S.D. 2020) (1:19-CV-01017-CBK). The parties appealed the lower court's decision. Before the issue could be heard on appeal, the Legislature passed SB 180. *SD Voice*, 987 F.3d at 1189. Thus, the Eighth Circuit was required to address whether the appeal was moot. *Id.* In determining that the issue was moot, the court stated, "SB 180 [was] a far cry from HB 1094 and d[id] not disadvantage Plaintiffs in the same fundamental ways that HB 1094 did." *Id.* Therefore, "[c]onsidering SB 180's substantial changes," the Plaintiffs were not affected in the same ways as they were under HB 1094. *Id.* at 1190. Accordingly, the court was required to dismiss the appeal as moot because there was no continuing injury from HB 1094. *Id.*

Likewise, SB 180 and SDCL § 2-1-1.4 does not "burden" DFH in a substantially similar way. To determine the constitutionality of § 2-1-1.4 a fact-intensive inquiry is required. *Dakotans for Health*, 543 F.Supp.3d at 784. Without such deep inquiry, the Court cannot determine whether the two laws are sufficiently similar. Despite the need for a separate proceeding, § 2-1-1.4 is clearly distinct from SB 180. To start, SB 180 did not repeal or modify SDCL § 2-1-1.4 in any way. SB 180 also imposed substantially harsher burdens.

> SB 180 imposes the following burdens on paid circulators: 1) prior to circulating petitions, paid circulators must fill out a form disclosing their name, home address, phone number, and email address to the Secretary of State; 2) the information submitted to the Secretary of State by paid circulators is available to anyone who requests it from the Secretary of State by email, telephone or letter (the information is not available on the website); 3) paid circulators must update their information within seven days if it changes; and 4) paid circulators must wear a badge indicating their status as a paid circulator but not otherwise personally identifying them.

*Id.* at 784. One major concern regarding SB 180 was its disclosure requirements. *Id.* at 786-87 ("In addition to name and address, paid circulators in South Dakota must disclose phone numbers, email addresses, state of issuance for driver license or other i.d., state of voter registration, and whether the paid circulator is a registered sex offender."). This requirement was substantial because SB 180 required that all of the information submitted by the paid circulators to be open to public records requests. *Id.* at 787. Therefore, everything submitted to the Secretary of State's Office could be requested and used to harass circulators while circulating petitions. Thus, chilling and infringing upon First Amendment rights.

Whereas SDCL § 2-1-1.4 prohibits the disclosure of any information unless a valid petition challenge was raised after the petitions are already submitted to the Secretary of State. SDCL § 2-1-1.4 ("The contents under this section of any affidavit filed with the secretary of state shall be held confidential by the secretary of state, and the secretary of state may release the

contents only to an interested person for purposes of § 2-1-18 and to the attorney general."). Thus, § 2-1-1.4 eliminates the court's constitutional concern addressed in *Dakotans for Health v. Noem*, 543 F.Supp.3d at 789.

Moreover, the information submitted under § 2-1-1.4 is only to be used as factors to determine residency in § 12-1-4, no one piece of information submitted pursuant to § 2-1-1.4 is a complete bar to circulating petitions. SDCL § 2-1-1.4. No one factor listed is dispositive under the statute to determine residency of the circulators. SDCL § 2-1-1.4 still requires SDCL § 12-1-4's residency definition govern.

> For the purposes of this title, the term, residence, means the place in which a person is domiciled as shown by an actual fixed permanent dwelling, establishment, or any other abode to which the person returns after a period of absence.
>
> A person who leaves the residence and goes into another county of this state or another state or territory for a temporary purpose has not changed residence.
>
> A person is considered to have gained residence in any county or municipality of this state in which the person actually lives, if the person has no present intention of leaving.
>
> A person retains residence in this state until another residence has been gained. If a person moves from this state to another state or territory with the intention of making it the person's permanent home, the person loses residence in this state. SB 180 and SDCL § 2-1-1.4 may have a residency component; however, the two residency requirements are not the same.

SDCL § 12-1-4. The affidavit requirements under § 2-1-1.4, help provide shape to the fluid definition found in § 12-1-4.

SB 180, on the other hand, placed a 30-day residency requirement on circulators. If the 30-day residency requirement was not met, then the circulator's petitions would not count towards the total vote of valid signatures.

Although SB 180 and § 2-1-1.4 both have residency components, the two laws are distinct and require a separate judicial determination regarding the constitutionality of § 2-1-1.4. *See Initiative & Referendum Institute v. Jaeger*, 241 F.3d 614, 616-17 (8th Cir. 2001) (holding a residency requirement for petition circulators was constitutional); *see also Kean v. Clark*, 56 F.Supp.2d 719, 728-29, 732-34[2] (S.D.Miss. 1999) (holding a residency requirement permissible after applying strict scrutiny); *Initiative & Referendum Institute v. Secretary of State of Maine*, No. Civ. 98-104-B-C, 1999 WL 33117172, at * 16 (D.Me. 1999). Therefore, this Court lacks the subject matter jurisdiction to place SDCL § 2-1-1.4 under its original order declaring SB 180 unconstitutional. If DFH wishes to challenge § 2-1-1.4 it may do so by initiating a new lawsuit; however, it cannot retroactively place it under this Court prior Order.

**B. The Court's ruling in *SD Voice v. Noem* overturned the Legislature's attempted repeal of SDCL § 2-1-1.4**

DFH also takes issue with the survival of SDCL § 2-1-1.4. (Docket 78-1). However, Life Defense outlines how § 2-1-1.4 survived the Legislature's attempted repeal. (Docket 76 at p. 4-12). In short, HB 1094 was properly challenged before it became effective. As such, the challenge tolled its effective date while the constitutionality of HB 1094 was being determined. Thereafter, *S.D. Voice* ruled HB 1094 was unconstitutional resulting in the attempted repeal of §

---

[2] "The Court finds that the State demonstrated that the circulator residency requirement does not unnecessarily burden free speech and that it is narrowly tailored to achieve the compelling interest of the State in policing the ballot initiative process. As the Supreme Court stated in *Buckley*, a circulator residency requirement is a 'needful integrity-policing measure' which achieves the goal of policing the ballot initiative process more precisely than a voter registration requirement. *Buckley[ v. American Constitutional Law Foundation, Inc.*, 119 S.Ct. 636, 645 (1999)]. Accordingly, the Court finds that the circulator residency requirement imposed by way of the amendment to Miss. Const. art. 15, § 273(12) is constitutional because it is narrowly tailored to the aim of preventing campaign fraud." *Kean*, 56 F.Supp.2d at 733.

2-1-1.4 being nullified.  Therefore, SDCL § 2-1-1.4 is good law and governs in the State Court proceeding.

### C. SDCL § 2-1-1.4 is not a "Zombie Law"

DFH allude to SDCL § 2-1-1.4 being a Zombie Law.  (Docket 78-1).  However, very few courts have addressed this legal theory.  In fact, Life Defense can find no Eighth Circuit opinions addressing Zombie Law.  Only the Fifth Circuit seems to have embraced this concept.

Zombie law is supposedly a law that is on the books but was ruled unconstitutional by a prior court order.  *See* Wasserman, Zombie Laws, 25 Lewis & Clark L. Rev. 1047, 1049 (2022).  Based on this understanding, the only laws which could be "Zombies" are HB 1094 and SB 180.  Both of these bills have been ruled unconstitutional by this federal district court.  Thus, the Legislature's attempted repeal of § 2-1-1.4 in HB 1094 – ruled unconstitutional in *SD Voice* – would be the only undead law in this relevant case.  The natural progression would be to determine the repeal was nullified and § 2-1-1.4 be revived.  DFH's Zombie theory is misplaced.

## CONCLUSION

Life Defense respectfully requests this Court to deny DFH's request to join Life Defense to the existing Order enjoining SB 180.  Evident from the briefing already submitted, is that Life Defense is not infringing upon this Court's order enjoining SB 180.  Life Defense respectfully asserts there is no need for this Court to add Life Defense to its existing Order enjoining SB 180.

Dated:  July 5, 2024.

                GUNDERSON, PALMER, NELSON
                   & ASHMORE, LLP

By:  */s/ Richard M. Williams*
     Richard M. Williams
     P.O. Box 8045
     Rapid City, SD  57709
     Telephone: (605) 342-1078
     E-mail:  rwilliams@gpna.com